UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | |
|---|---|
| HERBERT G. WARDEN,<br>Plaintiff,<br><br>vs.<br><br>JASON TERRIS, et al.,<br>Defendants. | Civil No. 5: 11-52-KKC<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

This matter is before the Court upon the motion of the defendants, Jason Terris, Angela Carpenter, Dr. Francisco Rios and Dr. Michael Growse, to dismiss the complaint, or in the alternative, for summary judgment. [R. 59] Plaintiff Herbert G. Warden has filed his response to the motion [R. 61] and the defendants have filed their reply. [R. 62] The matter is therefore ripe for decision.

**I**

Plaintiff Herbert Warden is a former inmate who was previously incarcerated at the Federal Medical Center in Lexington, Kentucky. Following his conviction on federal drug trafficking charges in July 2009, Warden self-surrendered into federal custody at FMC-Lexington on September 8, 2009, where he remained in custody until his transfer to home incarceration on November 1, 2012. [R. 59-1, p. 1]

When he arrived at FMC-Lexington, Warden suffered from a plethora of medical conditions, including diabetes, chronic airway obstruction, rotator cuff problems, retinal melanoma, coronary atherosclerosis, obesity, hypertension, gastroesophageal reflux disease, sleep apnea, lumbar spinal stenosis, neck pain, and diabetic retinopathy. *Id.* at p. 1, n.3. Warden also reported that he had been diagnosed with dementia incident to Alzheimer's disease, and had in his possession the medications Aricept and Namenda. A June 18, 2008, letter from Dr. Craig Woodward indicated that he had treated Warden for

1

related cognitive impairment and diabetic peripheral neuropathy since September 2003, and had treated Warden's dementia successfully with Aricept. [R. 1, Exh. D at 1]

Upon his arrival, Dr. Francisco Rios evaluated Warden and requested that prescriptions for generic versions of Aricept and Namenda be approved. Dr. Michael Growse initially denied the request for a long-term prescription, but on September 25, 2009, approved a request for a six-month prescription to allow time to develop a long-term treatment plan. [R. 59-1, pp. 3-4] On October 20, 2009, Dr. Franca Cambi, M.D., Ph.D., a doctor and professor of neurology at the University of Kentucky Department of Neurology, conducted a telemedicine evaluation of Warden. By letter dated October 21, 2009, Dr. Cambi recommended the continued use of Aricept and Namenda to treat Warden's dementia. [R. 1 Exh. A at 1, Exh. C at 2]

On March 23, 2010, the six-month prescription for these medications expired. Two days later, Dr. Growse denied a request to extend the prescriptions because a long-term treatment plan had still not been developed. [R. 59-1, p. 4] Shortly thereafter, on April 13, 2010, Warden was re-evaluated by Dr. Cambi, who again indicated that Warden would benefit from the resumption of both medications. [R. 1 Exh. A at 1, 2] However, on May 27, 2010, Dr. Growse informally expressed his disapproval of resuming the medicines to Warden's then-treating BOP physician, noting that Aricept and Namenda were indicated to delay the onset of dementia for six months, and while Warden had been diagnosed five years prior, he was showing no clinical signs of dementia. [R. 59-1, pp. 5-6]

On June 24, 2010, Warden filed a formal grievance with the warden challenging the discontinuation of his prescriptions for Aricept and Namenda. [R. 59-4, pp. 4-5] Warden Deborah Hickey denied that grievance on July 7, 2010, noting that the because "long-term uses of these medications

produce little clinical benefit in the treatment of Alzheimer's ... the Clinical Director has determined that the risk benefit ratio does not support continued prescribing of this medication." *Id.* at p. 6.

On July 9, 2010, Dr. Rios submitted a request to renew Warden's prescriptions in light of Dr. Cambi's April 13, 2010, evaluation. Dr. Rios's request noted that Warden's initial six-month prescription ending on March 13, 2010, had been terminated because a long-term treatment plan had not been established at that point, but Warden had since been re-evaluated by the neurologist. [R. 59-26, p. 1] The Logistics Pharmacist at the BOP's Central Office approved that request on July 13, 2010. *Id.* at p. 2. Warden remained on prescriptions for Aricept and Namenda throughout the remainder of his stay at FMC-Lexington until his transfer to home confinement on November 1, 2012. [R. 59-4, p. 6]

Although his prescriptions had been renewed, on July 28, 2010, Warden appealed Warden Hickey's denial of his grievance by filing a Form BP-230 appeal to the Mid-Atlantic Regional Office. On October 25, 2010, the Regional Office denied the appeal, noting that Warden's prescriptions had been resumed for six-month periods on July 24, 2010, and again on September 27, 2010. The Regional Office's letter denying his appeal advised Warden that he should appeal to the Central Office if he was dissatisfied with its decision. Warden took no further steps to appeal from the denial of his grievance. [R. 1, p. 8]

Warden filed his complaint in this action on January 26, 2011, under the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). Warden contended that the discontinuation of his medicines in Spring 2010 constituted deliberate indifference to his serious medical needs in violation of the Eighth Amendment, and sought compensatory and punitive damages. [R. 1]

II

In their motion to dismiss the complaint, or in the alternative for summary judgment, the defendants contend that Warden failed to properly exhaust his administrative remedies [R. 59-1, pp. 8-11]; cannot demonstrate deliberate indifference to his medical needs [R. 59-1, pp. 11-15]; failed to make specific factual allegations to establish scienter [R. 59-1, pp. 15-16]; may not predicate liability against former associate warden Terris based upon his supervisory role [R. 59-1, pp. 16-17]; and cannot overcome the defendants' entitlement to qualified immunity. [R. 59-1, pp. 17-19] Warden has responded to each of these arguments in turn. [R. 61]

The Court must treat the defendants' motion to dismiss the complaint as a motion for summary judgment under Rule 56 because they have attached and relied upon documents and declarations extrinsic to the pleadings in support of it. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). A motion under Rule 56 challenges the viability of the another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If the moving party demonstrates that there is no genuine dispute as to any material fact and that she is entitled to a judgment as a matter of law, she is entitled to summary judgment. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need her own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remain for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F.2d

138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

The court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, his evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F.3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1444 (6th Cir. 1993).

Having review the arguments of the parties, the Court concludes that the defendants are entitled to judgment as a matter of law on the first two grounds asserted in their motion. The Court therefore does not reach their alternative arguments.

## A

First, Warden failed to fully and properly exhaust his administrative remedies. Federal law requires a prisoner challenging prison conditions pursuant to 42 U.S.C. § 1983, *Bivens*, or other federal law to exhaust all available administrative remedies before filing suit in federal court. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The exhaustion requirement applies to all claims related to the conditions of the prisoner's confinement, including medical care. *Witzke v. Femal*, 376 F.3d 744, 751 (7th Cir. 2004). Exhaustion is also required even where the prison grievance system cannot provide the relief sought in the complaint, such as monetary damages. *Booth v. Churner*, 532 U.S. 731,

739-41 (2001) ("Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."); *Massey v. Helman*, 259 F.3d 641, 646 (7th Cir. 2001).

Warden readily acknowledges that he did not appeal the Mid-Atlantic Regional Office's October 25, 2010, denial of his appeal. [R. 1, p. 8] He argues, however, that he was not required to fully exhaust his available administrative remedies because he was not "dissatisfied" with MARO's denial of his appeal in light of the reinstatement of his prescriptions. [R. 61, pp. 6-9]

The Court finds this explanation factually questionable and legally insufficient. As a factual matter, Warden's prescriptions for Aricept and Namenda were reinstated on July 13, 2010, two weeks *before* he filed his appeal to MARO. [R. 59-1, p. 7] To the extent Warden's motivations for continuing to invoke the prison's grievance process are relevant at all, the fact that his prescriptions had already been reinstated when he filed his appeal contradicts his assertion that his purpose in appealing to MARO was to obtain relief that had, at that juncture, already been provided.

But more fundamentally, once MARO rendered its decision, Warden's explanation for his failure to appeal to the Central Office – that he was satisfied with MARO's response (and thus had no reason to continue the appeals process) – is also doubtful. While Warden contends that the resumption of his prescriptions addressed his concerns, it plainly did not do so entirely. First, Warden's prescriptions had been discontinued twice before, once briefly upon his arrival at FMC-Lexington and later in March 2010, and MARO's decision did nothing to ensure that they would not be discontinued again. Second, at least twice Dr. Growse had expressed his substantive opposition to resuming the prescriptions on the grounds that the medicines were indicated to delay the onset of dementia for six months, and Warden had been diagnosed five years prior, and because he was showing no clinical signs of dementia. By failing to appeal further, Warden abandoned a chance to obtain a determination by medical professionals at the BOP's

national level that the prescriptions were, contrary to Dr. Growse's conclusions, medically appropriate. Finally, MARO's decision did not address Warden's objection that Dr. Growse, whom he characterized as a general practitioner, had not adopted the recommendation of a neurology specialist. Warden's assertion that he had nothing further to gain by pursuing an appeal to the BOP's Central Office is therefore contradicted by his own allegations.

Legally, the fact that a prisoner could not have obtained the relief he or she sought through litigation in the prison's grievance system is not, by itself, sufficient grounds to excuse the statutory exhaustion required by 28 U.S.C. § 1997e(a). As the Supreme Court has explained,

> It strikes us that the same definitions get the respondent corrections officers and their *amicus* the United States closer to firm ground for their assertion that the phrase "such administrative remedies as are available" naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands. ...
>
> The "available" "remed[y]" must be "exhausted" before a complaint under § 1983 may be entertained. While the modifier "available" requires the possibility of some relief for the action complained of (as the parties agree), the word "exhausted" has a decidedly procedural emphasis. It makes sense only in referring to the procedural means, not the particular relief ordered.

*Booth*, 532 U.S. at 738-39. Here, there is no question that the BOP's grievance process provides prisoners with an informal administrative mechanism through which they may express their concerns and obtain relief regarding all aspects of the conditions of their confinement. 28 C.F.R. § 542.10(a). Warden was therefore required not merely to invoke that process, but to carry that process through to its completion through available appeals to and including the BOP's Central Office. 28 C.F.R. § 542.13-.15. This he did not do.

Warden argues that while the BOP's grievance process was "available" to him when he filed his grievance with the warden, it became unavailable to him once his prescriptions were resumed. Some

7

courts have accepted this dubious assertion, albeit without any meaningful discussion or analysis. *Cf. Kaplan v. New York State Dept. of Correctional Services*, No. 99 Civ. 5856(JGK), 2000 WL 959728, at *3 (S.D.N.Y. July 10, 2000); *Cotton v. Kingston*, No. 03-C-468-C, 2004 WL 2325053, at *4 (W.D. Wis. Sept. 4, 2004). One court held that a prisoner was entitled to abandon any further pursuit of administrative appeals when he obtained certain treatment requested. *Gomez v. Winslow*, 177 F. Supp. 2d 977, 984 (N. D. Cal. 2001). But this holding disregards the Supreme Court's unequivocal statement that "Congress has mandated exhaustion clearly enough, *regardless of the relief offered through administrative procedures*." *Booth*, 532 U.S. at 741 (emphasis added).

For example, the court in *Brady v. Attygala*, 196 F. Supp. 2d 1016 (C. D. Cal. 2002) concluded that *Booth* did not require a prisoner to appeal a grievance determination after he had been given the medical examination requested, determining that such a development rendered the grievance process effectively unavailable. *Id.* at 1019-20. But this holding commits the fundamental error in logic described by the Court in *Booth*: "It makes no sense to demand that someone exhaust 'such administrative [redress]' as is available; one 'exhausts' processes, not forms of relief, and the statute provides that one must." *Booth*, 532 U.S. at 739. While some portion of the "redress" sought by Warden was no longer necessary because his prescriptions had been reinstated, the "process" under the BOP's inmate grievance program remained "available." In this regard, it must be remembered that while one of the purposes of the exhaustion requirement is to permit the prisoner to obtain relief at the administrative level to avoid unnecessary resort to the courts, another core value is to permit the agency to review its practices, up to and including by the highest levels of the agency's leadership, in order to improve its processes. This value is eviscerated by court-created rules which permit a prisoner to abandon an appeal process prematurely through crafting

8

his requested relief carefully, disavowing any intention to seek monetary compensation at the administrative level only to later seek damages in judicial proceedings.

The notion that a prisoner may be relieved from appealing to the highest level permitted under the administrative remedy scheme once he or she obtains some measure of relief is contrary to the Supreme Court's decision in *Booth*. The Supreme Court made clear that neither the precise nature of the relief sought by the prisoner nor the limited scope of the remedies available through administrative review provided a basis for judicial officers to graft equitable or prudential exceptions onto a statute which provides that administrative exhaustion is mandatory:

> That Congress has mandated exhaustion in either case defeats the argument of Booth and supporting *amici* that this reading of § 1997e (1994 ed., Supp. V) is at odds with traditional doctrines of administrative exhaustion, under which a litigant need not apply to an agency that has no power to decree relief, or need not exhaust where doing so would otherwise be futile. Without getting into the force of this claim generally, we stress the point (which Booth acknowledges, see Reply Brief for Petitioner 4) that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise. Here, we hold only that Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues.

*Booth*, 532 U.S. at 741 n.6 (internal citations and quotation marks omitted). While Warden may have been "satisfied" with the resumption of his medications at the time, that satisfaction does not provide a legal justification for his failure to complete the inmate grievance process, particularly where, as here, he later decides that his "satisfaction" did not extend to the prior interruption of his prescriptions in the first place, and seeks substantial monetary damages in judicial proceedings subject to 28 U.S.C. § 1997e(a).

B

Second, the defendants are entitled to judgment as a matter of law because the evidence is insufficient to support a jury verdict that they were deliberately indifferent to Warden's serious medical needs in violation of the Eighth Amendment. *Anderson*, 477 U.S. at 251. In his complaint, Warden

9

alleges that the defendants disregarded a risk of serious harm to his well-being by discontinuing his prescriptions for Aricept and Namenda. As support for this claim, Warden relies upon the recommendations made on October 20, 2009, and April 13, 2010, by Dr. Franca Cambi that these medications be continued.

A viable disagreement between health care professionals would likely be sufficient to present a jury question as to adherence to the appropriate duty of care in a medical malpractice action. However, in this *Bivens* action under the Eighth Amendment, the inquiry is fundamentally different. The question is not whether the physician's treatment satisfied the duty of care, the question is whether the doctor actually possessed a subjective state of mind to disregard a serious known risk of harm to the prisoner's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Brooks v. Celeste*, 39 F.3d 125, 128-29 (6th Cir. 1994). "Deliberate indifference" is "a knowing and culpable state of mind [which may be] demonstrated by circumstances such as 'intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.'" *Id.* at 104; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

To prove this, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to the plaintiff's serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Here, Warden alleges only that Dr. Growse declined to approve the recommendation from Dr. Cambi that Warden be prescribed Aricept and Namenda. Dr. Growse stated several medical bases for his decision. First, he indicated that because the BOP lacked a prior medical assessment to demonstrate Warden's need for the medications, a permanent prescription was not appropriate. Second, he concluded that Warden was not exhibiting any clinical signs of dementia. Third, the medications are indicated to delay the onset

of dementia for six months, but Warden had already been on the medications for longer than this period. [R. 59-27, pp. 2-3] While Warden may disagree with one or more of these assessments, they are plainly medical judgments reached by defendants in furtherance of his health and well-being, and constitute the antithesis of deliberate indifference.

In this context, courts have long held that "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004). Thus, the fact that there is a reasonable disagreement among health care providers regarding the most appropriate course of medical treatment negatives the possible existence of a culpable state of mind in the defendant treating physician. *Strange v. O'Brien*, No. 7:10-CV-151, 2010 WL 8750304, at *3-4 (W.D. Va. 2010) ("The fact that their medical decisions did not coincide with the medical opinion offered by the other doctor's recommendation states nothing more than a disagreement over treatment, which is insufficient to state a constitutional claim."). This rule applies with equal force when the treating physician determines, notwithstanding a specialist's recommendations otherwise, to follow a different course of treatment in light of his or her knowledge of the full panoply of the prisoner's medical conditions. *Cf. Ortiz v. Markram*, No. 96 Civ. 3285-AGS, 2000 WL 1876667, at *9-10 (S.D.N.Y. Dec. 21, 2000); *Hairston v. Lappin*, No. 1:11-CV-1379, 2013 WL 5701637, at *20 (M.D. Pa. Oct. 18, 2013). The Court therefore concludes that Warden has failed to set forth facts sufficient to withstand the defendants' motion for summary judgment.

Accordingly, **IT IS ORDERED** that:

1. The defendants' motion for summary judgment [R. 59] is **GRANTED**.

2. Warden's complaint [R. 1] is **DISMISSED WITH PREJUDICE**.

3. The Court will enter a judgment contemporaneously with this Order.

4. Warden's Motion in Limine [R. 63] is **DENIED AS MOOT**.

5. This matter is **STRICKEN** from the active docket.

Entered March 19, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY